OTIS WAYNE HARPER V. STATE

No. 27,736.  November 9, 1955
State's Motion for Rehearing Denied
(Without Written Opinion) December 14, 1955

*Martin & Shown,* by *W. E. Martin, James B. Turner* (counsel on appeal only) all of Houston, for appellant.

*Dan Walton,* District Attorney, *Eugene Brady, Thomas D. White,* Assistants District Attorney, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is the possession of heroin; the punishment, 10 years.

Officer Tucker testified that at approximately 5:00 P.M. on the day in question he observer two men, one of whom he recognized as Haynes, seated in a parked automobile on a street in the city of Houston some 50 feet from a filling station; that the automobile had two flat tires, and "the right side was bent"; that Haynes was "sitting with his head kind of slumped over

the wheel," and he could barely see the top of the head of the other man; and that it looked to him like they had been involved in an accident. Tucker circled the block, and when he returned Haynes had gone inside a filling station and the appellant was standing up on the sidewalk. He went up to the appellant, whom he knew had been to the penitentiary for narcotics and had been arrested several times on suspicion of narcotics, and he thought once for burglary; and we then quote from his testimony: "I told him we have been having some bad reports on him; that we had heard that he had been pushing heroin out in the Denver-Harbor Addition." Tucker stated that he then arrested the appellant and searched his person and found the heroin which forms the basis of this prosecution.

By Bill of Exception No. 1 it is shown that the appellant is 5'2" in height, weighs about 96 pounds, is a badly deformed hunchback, and when sitting is about one head lower than an average sized adult person; and, according to the officer's testimony, he got the impression that the other man with Haynes was slumped down when he first passed but that he could have been mistaken because he found that the appellant was so short.

The officer's testimony is confusing on this point, but we think a reasonable construction of the record would be that *after* the search the appellant was then asked where he had been, to which question the appellant failed to give a definite answer, and he was also asked where he had bought the heroin, to which question no answer is shown.

Following this, Haynes came out of the filling station, and he was arrested. We think a discussion of the officer's observa- of Haynes' condition at the time of his arrest would·be of no probative value in this case because the appellant was already under arrest when Haynes came upon the scene.

The appellant did not testify and offered no evidence in his own behalf.

The sole question presented for review is the admissibility of the fruits of the search of the appellant's person which followed his arrest.

The state relies upon the ordinance of the city of Houston passed under the authority of Article 214, V.A.C.C.P.; Holt v. State, 144 Texas Cr. R. 62, 160 S.W. 2d 944, and 144 Texas Cr. R. 88, 160 S.W. 2d 957; McCutcheon v. State, 158 Texas Cr. R.

419, 252 S.W. 2d 175; the recent opinion of this court in French v. State, No. 27,637, 284 S.W. 2nd 359, and several other cases.

The appellant contends that the ordinance of the city of Houston goes much further than is authorized by Article 214, V.A.C.C.P., and is therefore not authorized by the statute.

In the two Holt cases, the facts surrounding the arrest and search of the Holts are not set forth, and therefore are of little aid to us here. We note, however, that the court held the fruits of the search admissible under both the ordinance and Article 325, V.A.C.C.P.

In the McCutcheon case, the officers saw two men step up on the sidewalk at night and throw something over a hedge. The officers then questioned the men, and they denied that they had thrown anything; the officers then looked behind the hedge and found two shirts. We held that such conduct on the part of men unknown to the officers authorized a search of their persons and their automobile under the ordinance of that city.

In the recent French case, the facts were these. Two narcotic enforcement officers were outside a certain cafe in the city of Houston, observing, while uniformed officers were making a raid inside the cafe. They observed the appellant, who was known to them to be a handler of marihuana, walk up to the door of the cafe where he could see what was going on inside, but instead of entering abruptly turned and ran to his automobile and endeavored to leave the vicinity in great haste. In that case, we were careful to say:

"We do not hold that the information which the officer had received about the appellant's connection with narcotics alone would have authorized the search, but we do hold that his flight under the circumstances here presented, together with the information which the officer had about him, authorized the arrest of the appellant as a person of suspicious demeanor under the ordinance, and the subsequent search."

But let us now carefully examine the facts in the case before us to determine whether or not the ordinance in question, insofar as it does not conflict with or exceed the power granted the city by Article 214, authorizes the arrest and search of the appellant here.

When the officer first passed, he says he got the impression that a parked automobile had been in an accident. But when

he returned, he asked the appellant no questions about a collision, nor was any proof introduced to show that the automobile had been involved in a collision. In fact, this is what he said:

"Got out of the car and went to the defendant and started talking to him. I identified myself, and his eyes started getting big, and he seemed to get very nervous; so I told the fellow he was under arrest for suspicion, and started searching him."

We see, therefore, that, stripped of all non-essential facts, we have here an officer who comes upon an ex-convict standing on the sidewalk during the business hours of the day doing nothing to indicate that he was involved in a violation of the law, and immediately arrests him upon "suspicion" and searches his person.

These were not, as we view it, sufficient grounds to authorize the arrest under the terms of the statute and under the provisions of the ordinance which are not in conflict with the statute. Nor do we here find sufficient facts to authorize the arrest and search under Section 15 of Article 725b, V.A.P.C., as we did in Sutton v. State, 157 Texas Cr. R. 216, 247 S.W. 2d 894.

The facts in the French case differentiate it from the case at bar. Here, we have no flight from a place under the observation of the officers. The language we used in the French case was perhaps ill-advised. We there upheld the ordinance in its entirety, without discussion, on the authority of one of the Holt cases, because the writer then felt that the facts before us there would have justified an arrest under *any* ordinance drawn in accordance with the terms of Article 214, V.A.C.C.P.; and no necessity, therefore, existed to pass upon or determine the validity of other provisions of the ordinance. The writer remains convinced of the correctness of our holding in the French case, but he feels that such case is not authority here and that, if the Houston ordinance may be construed as to authorize the instant arrest, to that extent it is invalid, because it exceeds the powers granted the city by Article 214, supra.

We cannot bring ourselves to believe that it was the intent of the legislature, in the light of the constitutional mandate against unreasonable searches and seizures, to give to a city the right to authorize a search with no more cause than is shown here.

The judgment of the trial court is reversed and the cause remanded.

WOODLEY, Judge (dissenting).

In the recent case of French v. State, No. 27,637, in an opinion by Presiding Judge Morrison, the ordinance here in question was upheld. Judge Davidson dissented and expressed the view that the ordinance was void.

The writer joined in affirming the conviction in French v. State, No. 27,637, 284 S.W. 2d 359, entertaining the view that Art. 214 C.C.P. authorized municipal authorities to establish rules authorizing the arrest without warrant of persons "under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws," without regard to whether the place of the arrest is or is not a "suspicious place."

As I view it, the question here is whether there is sufficient evidence to show that the arrest was made under circumstances reasonably showing that appellant had been guilty of or was about to commit an offense against the law.

The facts and circumstanses upon which the police officer acted include the following:

He knew appellant and his companion; knew them as "police characters"; had information that appellant "was a dealer in narcotics"; told appellant before the search "We had heard that he had been pushing (selling) heroin out in the Denver-Harbor addition" (the arrest occurred in that addition); was familiar with the police records of the two men and knew appellant had "been in the penitentiary before for narcotics."

Also he had information that appellant's companion "was wanted by the Burglary and Theft division, and also from the bulletin, for robbery."

Also, the officer knew that appellant had been arrested several times for "suspicion of narcotics," and perhaps once for burglary, and that his companion had been arrested several times for carrying a pistol and had been filed on several times for procuring.

With this information, the officer saw appellant and his companion Haynes, about 5 P.M., sitting in an automobile which was parked on the street some fifty feet from a service station. Two tires on the car were blown out and the right side was bent.

The two men were seated in the car as the officer drove by, Haynes "sitting with his head kind of slumped over the wheel," and appellant seated on the right side.

The officers proceeded to the next intersection, got out of their car and came back. When they got back, appellant was standing beside the car and his companion Haynes had gone into the nearby service station.

Asked what he said to appellant before the arrest, the police officer testified "I told him we had been having some bad reports on him; that we had heard that he had been pushing (selling) heroin out in the Denver-Harbor addition."

Officer Tucker also testified:

"Q. When you returned back to where you had seen the defendant in company with Haynes parked, what did you do, Officer Tucker? A. Got out of the car and went to the defendant and started talking to him. I identified myself, and his eyes started getting big, and he seemed to get very nervous, so I told the fellow he was under arrest for suspicion, and started searching him.

"Q. Did you search him? A. Yes sir, I searched him."

Upon these facts the officer searched appellant and found him to be in possession of a narcotic. He also searched the car and arrested and searched appellant's companion Haynes, who was under the influence of a narcotic and whose arm showed signs of a recent injection of a hypodermic needle.

If we were correct in Holt v. State, 144 Texas Cr. R. 62, 160 S.W. 2d 944, (opinion by Judge Beauchamp) ; in Holt v. State, 144 Texas Cr. R. 88, 160 S.W. 2d 957, (opinion by Judge Graves) and in the French case, in upholding the validity of the ordinance authorizing arrest on probable cause to believe that accused had been guilty of some felony or breach of the peace, or threatened or was about to commit some offense against the law, though the ordinance did not require nor the facts otherwise show anything about the place of the arrest being a suspicious place, then under such holding the judgment should be affirmed.

I am at a complete loss to understand how the ordinance may be valid as applied to French and invalid as to appellant, and respectfully dissent from such holding.